UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

OPERATING ENGINEERS LOCAL 139
HEALTH BENEFIT FUND,

CENTRAL PENSION FUND OF THE
INTERNATIONAL UNION OF OPERATING
ENGINEERS AND PARTICIPATING EMPLOYERS,

WISCONSIN OPERATING ENGINEERS
SKILL IMPROVEMENT AND
APPRENTICESHIP FUND,

JOINT LABOR MANAGEMENT WORK
PRESERVATION FUND,

TERRANCE E. MCGOWAN, as a Trustee of said Funds, and

INTERNATIONAL UNION OF OPERATING
ENGINEERS, LOCAL 139, AFL-CIO,

      Plaintiffs,

  v.                                        Case No. 07-C-211

GREAT LAKES EXCAVATING, INC.,
a Wisconsin corporation,

      Defendant.

**ORDER ON PLAINTIFFS' PETITION FOR ATTORNEYS' FEES AND COSTS**

      On March 14, 2008, this court issued a decision and order granting the plaintiffs' ("the Funds") motion for summary judgment. Specifically, the court ordered that judgment be entered in favor of the plaintiffs and against the defendant, Great Lakes Excavating, Inc. ("Great Lakes"), in the amount of $26,086.75, plus attorneys' fees and costs. Thereafter, on April 9, 2008, the plaintiffs filed a petition for attorneys' fees and costs, which was supported by the affidavit of counsel for the plaintiffs, Attorney Laura M. Finnegan, together with a summary of the time records for her firm's work on the case. The defendant filed a brief in response to the plaintiffs' petition and the plaintiffs

filed a reply. Thus, the plaintiffs' petition for attorneys' fees and costs is fully briefed and is ready for resolution. For the reasons which follow, the plaintiffs' petition will be granted.

According to the Funds, they have incurred a total of $11,111.25 in attorneys' fees and $406.00 in costs (for a total of $11,517.25) in prosecuting their collection claim under 29 U.S.C. §§ 1132 and 1145, and 29 U.S.C. § 185. Thus, in accordance with the provisions of 29 U.S.C. § 1132(g)(2), they are entitled to full reimbursement of such amounts.

Not so, says the defendant. Although Great Lakes acknowledges that "[t]he billing rate used by counsel for the plaintiffs is not unreasonable and counsel for the plaintiffs has submitted detailed time entries to the Court" (Resp. at 1.), it nevertheless maintains that the amount being sought by the plaintiffs is unreasonable.

> As is shown by the record in these proceedings, this action was filed on March 22, 2007,[1] where the plaintiffs claimed a total of $30,457.35 due the plaintiffs "subject further to the possibility that additional contributions and liquidated damage will come due during the pendency of this lawsuit." During the pendency of this lawsuit, the defendant paid all the money claimed due by the plaintiffs and then some. As shown by the stipulation filed with the Court on February 26, 2008, the parties agreed that Great Lakes had paid all the contributions due from it through the work month of September, 2007, which was the period extending six months after the lawsuit was filed. Great Lakes expected that this stipulation left open for dispute the penalties and interest claimed by the union (given the plaintiffs' own conduct in creating situations w[h]ere payments were delayed) and what if anything was due for the work months following September, 2007. The Court determined otherwise and granted summary judgment against Great Lakes.
>
> As shown by the affidavit of Abby Bruckner filed with the Court on January 21, 2008, there has been constant friction between the plaintiffs and the defendant over both collection and accounting issues. As much as the defendant Great Lakes has tried to get itself on track by having its payments directed toward current contributions, the plaintiffs have been able to frustrate the ability of Great Lakes to do so by among other things, failing to provide lien waivers required to obtain the release of funds from Great Lakes' customers. [See Bruckner Affidavit, ¶ 15]. Great Lakes has contended that the plaintiffs' conduct has caused the interest and penalties,

---

[1] The court docket indicates that the complaint in this case was actually filed on March 5, 2007.

and now attorneys' fees, which the plaintiff is claiming. To award attorneys' fees amounting to 44% of the judgment in these circumstances is wrong.

For these reasons, the defendant respectfully submits that the fees claimed are unreasonable and have been unnecessarily expended with this lawsuit.

(Resp. at 3-4.)

In reply, the plaintiffs emphasize that they are seeking fees pursuant to 29 U.S.C. § 1132(g)(2). "An award of fees under this section is mandatory, if the Plaintiffs prevail on their claim under that same section." (Reply at 1.) The plaintiffs also note that the defendant admits the reasonableness of the billing rate. Furthermore, the plaintiffs argue that the circumstances presented by this case render as reasonable the amount of fees that are being sought.

> The time that Plaintiffs had to expend to collect the delinquent contributions, in this case, was likewise also reasonable. Unfortunately, Defendant's continuing failure to pay its contributions to Plaintiffs on time requires the Funds to file lawsuits to collect the delinquent contributions. In fact, the Plaintiffs have a fiduciary duty to collect delinquent contributions under ERISA. Defendant does not support its assertion with any case law that Plaintiffs should have cooperated with them to collect its receivables from its general contractors to pay the delinquent contribution. The burden is on the Defendant to pay its obligations to the Funds in a timely manner. Plaintiffs have no obligations to assist them in meeting that obligation.

(Reply at 1-2 (citations omitted).) Finally, the plaintiffs note that § 1132(g)(2) "'is a penalty statute rather than a statute merely regulating contract damages.'" (Reply at 3 (quoting *Operating Engineers Local 139 Health Benefit Fund v. Gustafson Construction*, 258 F.3d 645, 654 (7th Cir. 2001).) "To let Defendant escape the legal consequences of its behavior will only encourage it to continually violate the statute. The purpose of the statute's penalty provisions was to act as incentive to the employers to pay on time." (Reply at 2.)

An award of a reasonable attorneys' fee and costs to a fiduciary in an action to collect delinquent contributions is mandatory under 29 U.S.C. § 1132(g)(2) where a judgment has been obtained in favor of the fiduciary. *See Laborers' Pension Fund v. RES Envtl. Servs., Inc.*, 377 F.3d

3

735, 739 (7th Cir. 2004). But this does not mean that the law relating to the term "prevailing party" is not relevant to the determination of what is a reasonable attorneys' fee under § 1132(g)(2). To the contrary, the Seventh Circuit has stated:

> Unlike may other fee-shifting statutes, 29 U.S.C. § 1132(g)(2) does not use the term "prevailing party," but rather speaks of when "judgment in favor of the plan is awarded." Because Congress used the latter language only to specify that a pension plan, and not a participant or beneficiary, can take advantage of 29 U.S.C. § 1132(g)(2), case law regarding prevailing parties is applicable to this section of ERISA.

*Moriarty v. Svec*, 233 F.3d 955, 967, n. 4 (7th Cir. 2000). Such being the case, in the process of determining the amount of attorneys' fees to be awarded in a case such as this, the court must consider a number of factors. These include, *inter alia*, whether the plaintiff received a substantial settlement offer from the defendant. "Attorney's fees accumulated after a party rejects a substantial offer provide minimal benefit to the prevailing party, and thus a reasonable attorney's fee may be less than the lodestar calculation." *Moriarty*, 233 F.3d at 967. The court should also consider the concept of proportionality. "[T]he district court's fee order should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered or multiples of the damages claimed." *Id*. at 968. "In addition, the district court must provide an explanation of the hourly rate used, which is sufficient for [the court of appeals] to determine whether the district court has acted within its discretion." *Moriarty v. Svec*, 429 F.3d 710, 717 (7th Cir. 2005). In the end, however, "[d]istrict courts have wide discretion to determine what constitutes reasonable attorneys' fees." *Id*.

In this case, there is no challenge to the reasonableness of plaintiff counsel's hourly billing rate. The only challenge that the defendant mounts is to the reasonableness of the amount of work performed by plaintiffs' counsel. More precisely, the defendant argues that it is "wrong" for the plaintiffs to seek fees in the requested amount given the parties' February 2008 stipulation in which

4

it was agreed that, as of February 21, 2008, the defendant "had paid all the contributions due from it through the work month of September, 2007, which was the period extending six months after the lawsuit was filed." (Resp. at 3.) Great Lakes also maintains that attorneys' fees in the requested amount are unreasonable because, if the contributions had been applied as directed by the defendant (i.e., to the current obligations instead of past-due obligations), the amounts of delinquent payment assessment and interest would not have been so large, and therefore, not so hotly contested.

This action was commenced on March 5, 2007, when the complaint was filed. The time records submitted by the plaintiffs demonstrate that counsel (and/or a paralegal) spent a total of three hours prior to that date in preparing the lawsuit. That was certainly reasonable.

Thereafter, the records reveal time being spent on various matters, including how money which was being received by the plaintiffs should be applied to the defendant's obligations. That time was spent on such matters was certainly reasonable. After all, it was necessary for the plaintiffs to ultimately be able to present to the court the exact amount they claimed was due and owing to them by Great Lakes. Indeed, the end result of such accounting was the February 2008 stipulation.

Finally, the records reveal that in early December 2007 plaintiffs commenced working in earnest on the motion for summary judgment. In my opinion, the amount of time spent on the summary judgment motion, as well as the miscellaneous other matters reflected in the records from December 2007 through February 2008, does not appear to be unreasonable.

At its heart, Great Lakes' argument seems to be that it should not have to pay the plaintiffs' attorneys' fees to the extent that such fees relate to the seeking of delinquent payment assessments and interest. This is because, in the defendant's view, such assessments and interest were brought about by the plaintiffs' misapplication of contributions. But, in this respect, Great Lakes seems to

5

be rehashing an argument that has already been resolved against it at the summary judgment stage. The bottom line is that this court has already decided that the plaintiffs are entitled to such amounts.

In any event, turning to the factors discussed in *Moriarty*, this is not a case where the defendant made a substantial settlement offer which was rejected by the plaintiffs and after which the plaintiffs expended large amounts of attorney time to collect a paltry sum beyond the settlement offer. To be sure, in the stipulation of February 2008, the parties agreed that all contributions due through September 2007 had been paid. But, there is no evidence that thereafter the defendant offered to settle the remaining claim for delinquent payment assessments and interest.

Turning to the proportionality factor, the defendant asserts that the amount of attorneys' fees and costs being sought is 44% of the amount of the judgment (i.e., $11,517.25 is 44% of $26,086.75). That is true. However, it is far less than 44% of the amount of the plaintiffs' total recovery obtained during the course of the lawsuit. Recall that the lawsuit was commenced in March 2007 and it was not until February 2008 that the parties stipulated that all contributions due through the work month of September 2007 had been paid. Although the stipulation does not specifically state how much that sum was, it is reasonable to conclude that adding that figure to the amount of the judgment would reduce significantly the percentage that attorneys' fees would bear to the plaintiffs' total recovery. In any event, this is not a situation where the amount of fees being sought exceeds the amount of the plaintiffs' recovery.

In the end, this court is not insensitive to the defendant's position on the attorneys' fee issue. Nevertheless, the court cannot find the amount of attorneys' fees and costs being sought by the plaintiffs to be unreasonable. The plaintiffs' petition for attorneys' fees and costs will therefore be granted.

**NOW THEREFORE IT IS ORDERED** that the plaintiffs' petition for attorneys' fees and costs be and hereby is **GRANTED**;

**IT IS FURTHER ORDERED** that $11,111.25 in attorneys' fees and $406.00 in costs be and hereby are awarded to the plaintiffs.

**SO ORDERED** this 5th day of June 2008, at Milwaukee, Wisconsin.

/s/ William E. Callahan, Jr.
WILLIAM E. CALLAHAN, JR.
United States Magistrate Judge
